# NEW YORK SUPERIOR COURT.

THOMAS BUTLER agt. GEORGE W. NILES, WILLIAM LEE and others.

An *assignment of a judgment,* upon a condition of being *reassigned* in case it cannot be *set-off,* does not transfer the ownership of it with sufficient absoluteness to enable the assignee to set it off by analogy.

And an assignment of a judgment, upon condition of a rescission of the transfer, in case *the assignee cannot avoid a set-off,* cannot be a transfer absolute enough to evade it.

In an action to set-off judgments by the plaintiff as assignee of the judgment, he cannot, even if entitled to set-off his judgment against that of the defendant, make use of it to defeat the *incidental claims for costs* growing out of any legal proceedings to collect the defendant's judgment, instituted before the assignment of the plaintiff's judgment to him.

*New York Special Term, July,* 1863.

THE plaintiff seeks to set-off two judgments obtained against the defendant Niles, of which he claims to be assignee, against a judgment obtained against him by that defendant, whereof the defendant Lee claims to be assignee. The former judgments were obtained in June and July, 1859, by Francis Morris, as plaintiff, and assigned in No-

vember, 1862, to the plaintiff. The latter judgment was recovered in May, 1847, for $141.84, and assigned to the defendant Lee in October, 1862.

D. M. PORTER, *for plaintiff.*
A. R. DYETT, *for defendants.*

ROBERTSON, Justice. It is entirely immaterial what either the plaintiff or the defendant gave for the judgments assigned to them, except so far as what was given tends to show a secret understanding to hold such judgments in trust for the assignors, or on condition of reassigning in case the same could not be set-off, or, what is substantially the same thing, to defeat any attempt at a set-off. (*Gilmour* agt. *Van Slyck*, 7 *Cow. R.* 649.) The question, also, whether the plaintiff had notice of the assignment to Lee was also immaterial for similar reasons to those which I have given in the case of *Pignolet* agt. *Geer*, argued at the present term of this court.

The questions in the cause are narrowed to one of fact, therefore : Whether there was any secret understanding between the defendants, Niles and Lee, that the latter should take an assignment of the former judgment, to allow the same to be collected for the benefit of the former, and prevent any set-off ; in other words, in reality to hold it in trust for him ;—and one of law, whether such an assignment prevents such set-off.

The assignment to Lee is dated in October, 1862, more than fifteen years after the judgment assigned was recovered. There was then due upon it the principal ($141.84) and fifteen years and five months' interest ($153.06), making together five dollars less than $300.

At the time of such assignment, supplementary proceedings were pending on such judgment, conducted by the defendant Niles, and also an action to set aside certain conveyances by the present plaintiff. The defendant Lee was

then between twenty-four and twenty-five years of age, a son of an old acquaintance and client of the former defendant, and known to him for several years previously. His name had been legally changed, with those of the rest of his family, from Solomon. He had two places of business; one in which he sold wooden and willow ware, and in the other segars. The defendant Niles had been previously offered $450 for the judgment, and a short time before the assignment $350. Lee had previously lent Niles $25, then $75; subsequently the latter offered to assign to him the judgment in question for $200 in addition, stating that it was perfectly good, and that he would get his money in a short time. Lee supposed Niles to be then insolvent. No statement was made to Lee of the amount due on such judgment originally, except that it was assigned for $300, on which representation he relied. He did not know the present plaintiff, and had not been in the habit of buying old claims. After the assignment, Niles continued to superintend the proceedings for collecting the judgment. He did not assign the right to any costs to the defendant Lee. Apparently he was not an attorney of the supreme court, or any other court in which such proceedings were had; but other attorneys conducted them, in whose costs or earnings he participated. There was no agreement made as to any action to be taken by Niles in collecting such judgments, nor did he promise to do so. The defendant Lee, after receiving the assignment, put it in his safe, but in a month or two afterwards returned it to the assignor. He employed, as his attorney in this case, a partner of the assignor. The latter spoke to Lee, before the trial, about retaining the counsel who appeared for them on the trial in this case, and it was understood between them that he should try the case for both. On the first day of the trial in this cause, the defendant Lee remained in an adjacent room, occupied by another court, until after the adjournment of this court. He testified

that he did not come into the room where this court was held, because, at that time, he expected to be subpœnaed when he was wanted, and he told the defendant Niles, the same evening, that he had not been so, but when he came as a witness he did so voluntarily, without any subpœna. He also testified that he did not know that the trial was going on ; that he had to meet a person about four o'clock, and went into such court-room to listen to trials, as he often did, and that the defendant Niles found him in the court-room, where he was sitting after the adjournment of this court, and they walked up the street together. On the same evening Niles told Lee that he had seen the counsel, who had already been engaged in it for a day about trying the case ; Lee only on the morning of the second day of the trial asked such counsel if he would try the case, and the latter answered affirmatively. He never in person promised any fee to him. The defendant Niles testified on the first day of the trial that he spoke to such counsel, and he thought Lee did also, but he never told the latter to do so, and that he had never asked the latter to come to court.

The defendant Lee testified that he expected to lose the money advanced by him in case the judgment was not recovered. Both he and the defendant Niles testify that the assignment was not made as security.

Under these circumstances, is it fair to presume that the defendant Lee advanced his own and his father's old friend the sum of three hundred dollars ? For that he received an assignment of a judgment fifteen years old, on which supplementary proceedings and an action to set aside conveyances were pending. He knew nothing of the amount of the judgment or of the judgment debtor, and relied solely on the representation of the defendant Niles that it would be paid in a few days. The latter sold the judgment for $300, after having refused $350 a few days previous. Lee did not deal in claims, but in entirely different

articles. He only retained the assignment a short time before he returned it to the defendant Niles; and then of his own motion, and without any retainer from Lee, conducted a variety of proceedings to collect the judgment. Indeed, the latter seems to have had no interest in the amount of costs incurred or in any results, and the only attorney he employed was the partner of the assignor. He was at least so indifferent to results as to suspect a subpœna to attend a trial to which he was a party, and upon whose result the loss of the money advanced by him might depend. No pains were taken to inform him of the pendency of such trial. While it was going on he remained in an adjacent room listening to other trials, the only reasons given being that such was his habit, and he had to meet a person at four o'clock, although he had two places of business to attend to. After the court had adjourned he was easily discovered by the assignor of the judgment, by whom he was informed for the first time of the trial and of the necessity to retain the counsel who had been already trying the case for a day, and on the morning of the next day for the first time he asked such counsel to try the cause, although it had been already understood between him and the defendant Niles that the same counsel should act for both. He believed Niles to be insolvent; his only hope, therefore, of getting his money back was by means of the judgment, unless there was some secret or honorable or legal obligation entered into to refund it.

The testimony of the defendants Lee and Niles thus establishes a willingness by the defendant Niles to sell, and his actual sale of a claim for less than he had been offered and expected to get, and a subsequent zealous prosecution by him of the proceedings for enforcing it, without a retainer for the purpose, or prospect of compensation from the defendant Lee. A purchase by a dealer in wooden and willow ware of a claim fifteen years old in judgment against a person of whom he knew nothing, to collect which

several legal proceedings, intricate if not doubtful, were pending, without inquiry as to its original amount or any calculation of the amount due; his indifference to the proceedings which the assignor was so vigorously conducting; his failure to give any instructions for the prosecution of the claim; the little pains to notify him of the trial; his own convictions of his position being that of a witness to be compelled to attend, rather than a party who had interests to be looked after; his opportune presence within call at the time of the trial, for a purpose not very satisfactorily explained, and the equally opportune discovery of such presence by the assignor of the judgment immediately after the adjournment of the court; his postponement of the retainer of counsel until the time of the trial, and subsequently retaining him on the second day of it, after a suggestion to him by the assignor, although it had been previously arranged to employ such counsel for both parties. No fee was paid or promised on the occasion, and the previous retainer was as valid as any other act by the assignor as the agent of the assignee.

Such a purchase, such a sale, and such conduct of the parties would be incredible, if the assignee of the judgment were intended to be its permanent owner, and he had no other expectation or dependence for receiving his money back, except what could be recovered on it. He believed the defendant Niles to be insolvent; took his word implicitly as to the value of the judgment; never made, apparently, any complaint of his disappointment; permits his assignor to carry on an expensive litigation at his risk without inquiry; was not informed by his attorney, and never inquired about its progress, or attended to an important trial in it, and only retained counsel after that trial is half over. There can hardly be a doubt as to the least honorable obligation of the seller of the judgment, himself familiar with and conducting the legal proceedings in the case, and who expected profit from those already

begun, as well as their continuance, when a tradesman, a friend, and the son of an older friend, acquainted perhaps with what he himself dealt in, but ignorant of judgments, their value, mode of collection or profitableness by subsequent costs, advanced money for his necessities, relying entirely on his representations, and took such judgment, although of less value, in payment, that he should return the money so advanced, whatever was collected on the judgment. Lee never could have doubted for one moment that he would do so. If so, the pregnant facts of this case would add to such an obligation the irresistible inference that by some means, not always capable of direct proof, some communication, not always capable of being discovered by questions of counsel, passed between the parties, making it an understood matter that if Niles could not collect the judgment he was to restore to Lee the money advanced, at some future day.

It would always be a serious obstacle to the collection of such judgments, if any of the judgments against Niles fell into the hands of the plaintiff so as to be set-off, and he knew was necessary to be obviated. Lee probably knew nothing of that, but if he understood he was to recover his money back, in case the judgment became in any way uncollectable, it was not necessary he should. As, therefore, an assignment of a judgment upon a condition of being reassigned in case it cannot be set-off, does not transfer the ownership of it with sufficient absoluteness to enable the assignee to set it off by analogy, an assignment of a judgment, upon condition of a rescission of the transfer in case the assignee cannot avoid a set-off, cannot be a transfer absolute enough to evade it. (*Gilmour* agt. *Van Slyck*, 7 *Cow. R.* 649.)

But even if the plaintiff be entitled to set-off the judgments assigned to him against the judgment of the defendant Niles against him, he cannot make use of them to defeat the incidental claims for costs growing out of the pro-

ceedings instituted before the assignment to the plaintiff of such judgment, if properly commenced. They may have been legitimate and necessary consequences of the judgment when taken, and if the defendants Niles and Lee should be successful in such litigation, the plaintiff might have been bound to pay the costs. He has no right to take away the foundation of such proceedings, if still pending, by satisfying the judgment with those held by him. It is not equivalent to payment and acceptance in satisfaction *pendente lite*. The plaintiff must therefore either stipulate in this action to allow the defendants Niles and Lee to offset the costs in any proceeding or action pending to collect the judgment against him, to be adjusted against the plaintiff's claim, as well as the amount due on their judgment, and take judgment for the balance, if any—in which case there may be judgment given for the set-off asked for ; or else his complaint must be dismissed without costs, with leave to set up the same matters in such former action and proceeding by way of supplemental answer, when affirmative relief can be given him, if he is thereto entitled.

A decision must be prepared for the court by the plaintiff, embodying facts and legal conclusions corresponding with the foregoing views, to be signed by me.